IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE WELLS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DIMITRIOS LOIZOS | : | NO.  06-2320 |

### MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                                                       February 18, 2015

On December 11, 2014, after a four day trial before me, the jury returned a verdict for Defendant in this excessive force/malicious prosecution case.  Plaintiff has filed a motion for a new trial, arguing that he was deprived of a fair trial by the admission of inadmissible hearsay evidence.  Doc. 109.  Defendant responded that Plaintiff waived the claim by failing to object at trial, that the admission of the hearsay did not deprive Plaintiff of a fair trial, and that the court did not commit plain error by failing to strike the hearsay sua sponte.  Doc. 110.  For the reasons that follow, I will deny the motion.

**I.      RELEVANT FACTS**

On July 20, 2004, Defendant Loizos, a Philadelphia police officer who was on-duty at the time, received a radio call for a person with a gun in the vicinity of 18th and Thompson.  N.T. 12/9/14 at 94.  When Officer Loizos arrived at that corner, a male who matched the description in the radio call, later identified as Plaintiff, began running across a vacant, overgrown lot towards Seybert Street.  Id. at 12.  Although Officer Loizos never saw Plaintiff holding a gun, id. at 120-21, he testified that he saw Plaintiff grab the waistband of his pants, which indicated to the officer that Plaintiff had a gun there, and further testified that during the chase, Plaintiff swung his arm around and Officer Loizos heard "pop, pop, pop" and saw smoke coming from Plaintiff's hand and felt something strike his elbow.  Id. at 106-08.  The officer fired at Plaintiff,

and after a further chase fired again as Plaintiff entered a house on Ingersoll Street.  Id. at 110-16.  During the chase, Defendant fired a total of seven shots at Plaintiff, hitting him several times.  Id. at 12, 24-25, 30, 90.  Plaintiff was arrested inside the house on Ingersoll Street.  Id. at 115.  No gun was ever found.  Id. at 90.

At trial, Plaintiff denied having a gun, let alone firing shots at Officer Loizos.  N.T. 12/9/14 at 28.  Therefore, the fact that no gun was ever found supported Plaintiff's testimony.

During his testimony, Detective Timothy Scally described the investigation that took place after the shooting, including the efforts undertaken to locate the spent casings and Plaintiff's gun in the overgrown lot.  N.T. 12/10/14 at 31-32, 37-42, 50-60.  During his direct examination, Detective Scally stated that he concluded that Plaintiff had a gun, but that it was found by someone else and was "sold on the street."  Id. at 60.  He stated that this conclusion was based on an interview with Reginald Strickland.  Id. at 61.  Plaintiff's counsel did not object to any of these questions.  During cross-examination, Plaintiff's counsel asked the detective how he determined that someone else picked up the gun that Plaintiff allegedly had.  Id. at 62.  Again, Detective Scally said he had received that information from Mr. Strickland.  Id.

The defense planned to call Mr. Strickland to testify, and the court had made arrangements to have him testify via video-teleconference from the prison where he was serving a sentence unrelated to this trial; however Mr. Strickland refused to take the stand.  N.T. 12/11/14 at 12.  The defense elected to proceed without his testimony, and Plaintiff did not raise any objection or seek to compel Mr. Strickland's testimony.  Thus, Plaintiff was never able to cross-examine Mr. Strickland about the information relayed to the jury by Detective Scally regarding the ultimate whereabouts of the gun Plaintiff allegedly had at the time Officer Loizos

shot him.  Neither counsel made reference in closing argument to Detective Scally's testimony respecting what happened to the gun.  As previously mentioned, the jury returned a verdict for the defense.

On January 8, 2015, Plaintiff filed this motion for a new trial arguing that Mr. Strickland's failure to testify amounted to an irregularity in the proceeding that caused unfair surprise and resulted in the admission of inadmissible hearsay.  Doc. 109.  The defense has responded that Plaintiff's counsel's failure to object to the hearsay results in a waiver of the argument, that the jury could have inferred from other evidence that Plaintiff shot at Defendant, and that the court did not commit plain error in failing to strike Detective Scally's testimony sua sponte.  Doc. 110.

## II.   LEGAL STANDARD

After a jury trial, Federal Rule of Civil Procedure 59 allows the court in an exercise of its discretion, to grant a new trial if "the jury's verdict is against the clear weight of the evidence or if substantial errors occurred in the admission of evidence or in instructing the jury."  Kidd v. Pa. Bureau of Liquor Control Enforcement, Civ. No. 97-5577, 2001 WL 1159770, at *1 (E.D. Pa. Aug. 21, 2001) (citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)).  Errors committed during the course of a trial cannot justify the grant of a new trial unless they affected the substantial rights of the parties.  Fed. R. Civ. P. 61.  Our circuit court has held that a court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).  "[A]bsent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict.  Dowd v. Se. Pa. Transp. Auth., Civ. No.

04-294, 2006 WL 1371183, at *6 (E.D. Pa. May 16, 2006) (quoting Montgomery Co. v. Microvote Corp., Civ. No. 97-6331, 2001 WL 722150, at *8 (E.D. Pa. June 25, 2001)).

Consideration of Plaintiff's motion is further complicated because counsel failed to object at trial to the admission of the evidence/testimony that is the basis of this motion. "[I]t is clear that a party who fails to object to errors at trial waives the right to complain about them following trial." Waldorf v. Shufa, 142 F.3d 601, 629 (3d Cir. 1998). Specifically with respect to the admission of evidence, "a party is not entitled to receive a new trial for objections to evidence that he did not make at or prior to the initial trial, even if they may have been successful." Ashford v. Bartz, Civ. No. 04-642, 2010 WL 272009, at *4 (M.D. Pa. Jan. 20, 2010) (citing Wilson v. Vermont Castings, Inc., 170 F.3d 391, 295 (3d Cir. 1999); Waldorf, 142 F.3d at 629; Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 681 (3d Cir. 1980)). An exception to waiver occurs when "counsel fail[s] to object to a fundamental and prejudicial error resulting in a miscarriage of justice." Wilson, 170 F.3d at 395-96 (quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992)).

### III.   DISCUSSION

As explained in the factual summation above, during the defense case the jury heard from Detective Scally that he had received information from Mr. Strickland that Plaintiff's gun was picked up and sold on the street. Plaintiff's counsel failed to object to the testimony despite the fact that it was hearsay. Moreover, on cross-examination, Plaintiff's counsel asked Detective Scally about Mr. Strickland's statement, allowing the detective to repeat that Mr. Strickland told him that someone picked up the gun and sold it on the street. N.T. 12/10/14 at 60-61, 62.

In his motion for a new trial, Plaintiff's counsel stated that he did not object to the statement because Mr. Strickland was expected to testify and he "did not want it to appear to the

4

jury that [P]laintiff was attempting to hide this information." Doc. 109-1 at 2. As previously mentioned, the Third Circuit has recognized an exception to the waiver rule when counsel fails to object to a "fundamental and prejudicial error resulting in a miscarriage of justice. Wilson, 170 F.3d at 395-96 (quoting Fleck, 981 F.2d at 116). However I have found no case allowing for an exception to the waiver rule based on strategy. Counsel here made a strategic choice, which amounted to a calculated risk as Mr. Strickland had not yet testified.

Considering the totality of the evidence, I find that admission of Detective Scally's testimony did not amount to a miscarriage of justice. Other trial evidence linked Plaintiff to a gun that day. First, the parties stipulated that Mr. Wells was convicted of possession of a weapon related to the incident that led to the police call on the evening of July 20, 2004. N.T. 12/9/14 at 12-13. The jury also heard the testimony of Gregory Parker regarding the incident that led to the call to the police.[1] He testified that he saw three men on the corner of 18th and Thompson, when another man rode up on a bicycle. One of the men standing on the corner, whom he identified as Mr. Wells, tried to punch the man on the bicycle and then he pulled a gun out and held it to the bicyclist's head. N.T. 12/9/14 at 144-46. Additionally, although Officer Loizos never stated that he saw Plaintiff holding a gun, id. at 120-21, he heard "pop, pop, pop" and saw smoke coming from Plaintiff's hand during the chase, felt something nick his elbow, and suffered a laceration to the elbow. Id. 106-08. From this, the jury could have reasonably determined that, despite the fact that the police never found a gun, Mr. Wells in fact had one and shot at Officer Loizos, who was therefore justified in his use of deadly force by returning fire.

---

[1] Although Mr. Parker did not testify in person at this civil trial, his sworn testimony from Mr. Wells' criminal trial was read into the record. N.T. 12/9/14 at 143-67.

Mr. Strickland's hearsay statement did provide a plausible explanation for the failure to recover the gun. However, the jury also heard that Mr. Wells and Mr. Loizos ran through an overgrown lot with weeds and grass knee- to waist-high. N.T. 12/10/14 at 58. Although police searched the lot that day for bullet casings and the gun, Licenses and Inspections did not come out until the next morning to cut the grass and weeds to allow a more thorough search, including a search by a K-9 unit. Id. As a result, the jury could have come to the same conclusion regarding the whereabouts of the gun, even in the absence of Detective Scally's testimony regarding Mr. Stickland's statement. Therefore, I see no basis to overcome counsel's waiver of the issue.

To the extent Plaintiff challenges the court's failure to strike Detective Scally's testimony sua sponte, Defendant contends that the court did not commit plain error.[2] "The ability to reverse for plain error 'should only be invoked with extreme caution in the civil context,' and is only appropriate 'where the error is so serious and flagrant that it goes to the very integrity of the trial.'" Loesch v. City of Philadelphia, Civ. No. 05-578, 2008 WL 2367310, at *6 (E.D. Pa. June 4, 2008) (quoting Fashauer v. N.J. Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995)). As previously discussed, the jury heard ample evidence to conclude that Plaintiff

---

[2]The case Defendant relies on for applying the plain error standard to the court's failure to strike hearsay testimony sua sponte is an appeal of a criminal conviction and relies on Federal Rule of Criminal Procedure 52(d). See United States v. Cardona-Rosario, 285 Fed. Appx. 20, at 24 (3d Cir. Jul. 3, 2008). Nevertheless, the plain error standard is also utilized in civil cases when an issue is waived. See Collins v. Alco Parking Corp., 448 F.3d 652, 655 (3d Cir. 2006) (applying plain error standard to a waived objection to a jury charge); Belmont Indus., Inc. v. Bethlehem Steel Corp., 62 F.R.D. 697, 704 (E.D. Pa. 1974) ("In the absence of plain error, matters not called to the attention of the trial judge cannot subsequently be raised in the post-trial stages of the proceeding."); Fed. R. Civ. P. 51(d) (applying plain error standard to waived jury instructions).

possessed a gun at some point during the incident.  The fact that the hearsay testimony provided a plausible explanation for the inability of the police to find it did not render the trial unfair.

An appropriate Order follows.